UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATHAN R. GONINAN, | ) |
| | ) |
| Plaintiff, | ) CASE NO. C09-934-RAJ |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| WENDY JONES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983.  At the time plaintiff filed this action in July 2009, he was incarcerated in the Whatcom County Jail.[1]  Plaintiff alleged in his complaint that he was being subjected to daily strip searches and cell searches, and that this had been ongoing for a period of approximately five months.  Plaintiff identified Wendy Jones, Chief Corrections Deputy at the Whatcom County Jail, and Mark Raymond, Operations

---

[1] Plaintiff was transferred out of the Whatcom County Jail on November 3, 2009.  (*See* Dkt. No. 17 at 1.)

REPORT AND RECOMMENDATION
PAGE -1

Lieutenant at the Whatcom County Jail as defendants in this action.

Defendants now move for summary judgment. Plaintiff, despite having been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), has filed no response to defendants' motion. Following a careful review of defendants' motion, and the balance of the record, this Court concludes that defendants' motion for summary judgment should be granted and plaintiff's complaint and this action should be dismissed with prejudice.

## FACTS[2]

Plaintiff Nathan Goninan was booked into the Whatcom County Jail ("the jail") on December 8, 2008, on a manslaughter charge. (Dkt. No. 18 at 2.) Prior to plaintiff's arrival at the jail, jail officials received information from the Oregon Department of Corrections that plaintiff was an extreme security risk and had violent propensities. (*Id*. at 1.) When plaintiff arrived at the jail on the evening of December 8, he was placed in the segregation unit in order to establish his baseline institutional behavior and to give jail officials an opportunity to make an appropriate classification decision. (*Id*.)

Within hours of his arrival, plaintiff broke off the spigot to his sink and flooded his cell by plugging the toilet with a sheet. (*Id*. at 2 and 19.) A subsequent search of plaintiff's cell revealed that a seven inch piece of copper pipe was missing from the sink. (*See id*. at 2, 20, and 22.) A further search of plaintiff's cell failed to turn up the missing pipe. (*Id*. at 22.)

---

[2] Plaintiff alleges very few facts in his complaint. Thus, the facts set forth here are taken entirely from the declaration of defendant Wendy Jones. Plaintiff has not disputed any of these facts.

Plaintiff reported to corrections staff that he had swallowed small pieces of copper which ultimately led jail officials to obtain a body cavity search warrant. (Dkt. No. 18 at 2, 19, and 22.) Plaintiff was transported to the hospital for x-rays, but the x-rays revealed nothing. (*Id*. at 3.) Plaintiff then told corrections staff that he had flushed the pipe. (*Id*.) Plaintiff also told staff that he knew how to remove other fixtures from his cell and that he was impervious to physical control techniques such as Tasers and OC spray. (*Id*.)

On December 29, 2008, plaintiff, who was then apparently housed in isolation, threatened to destroy his cell and deputies decided to relocate him. (*Id*. at 4.) Though plaintiff initially refused to cooperate with the move, he eventually complied. (*Id*.) Once in his new cell, plaintiff began kicking and punching the cell door, injuring his hand in the process. (*Id*.) A Taser was used to gain control of plaintiff, and plaintiff was then placed in a restraint chair. (*Id*.) Plaintiff later managed to slip his arm out of the restraint chair and he attempted to head-butt the deputy who was trying to re-secure his arm. (*Id*.) Plaintiff spit at the deputy, hitting him in the face. (*Id*.) Plaintiff also managed to pull loose from the deputy who was controlling his head and he bit that deputy on the wrist. (*Id*.) Plaintiff eventually calmed down and was removed from the restraint chair. (*Id*.)

Because of his behavior, plaintiff was kept under close observation and was kept separate from other inmates. (*Id*.) On January 24, 2009, plaintiff met with Lieutenant Raymond. (*Id*.) Plaintiff agreed during this meeting to maintain certain standards of behavior and, as a result, he was moved to a more favorable housing classification which allowed him a greater degree of freedom. (*Id*. at 4-5.) However, two days later, a cell search revealed pieces of rolled-up paper that were in a form which suggested plaintiff was attempting

01  to create a crude blow gun.  (Dkt. No. 18 at 5.)   The search also revealed a single lens from a
02  pair of reading glasses which had been sharpened on one side.  (*Id*.)   These materials were
03  deemed consistent with previous threats made by plaintiff to assault staff and were also
04  considered a violation of plaintiff's agreement with Lieutenant Raymond.  (*Id*.)   Plaintiff was
05  therefore moved back to a more restrictive housing unit.  (*Id*.)

06      Almost a week later, on February 2, 2009, plaintiff and his cell were searched because
07  of suspicions that plaintiff had hidden something in his pants.  (*Id*.)   The pat search of plaintiff
08  revealed nothing.  (*Id*.)   However, during the search of his cell, corrections staff discovered
09  that the grout had been removed from around one of the mounting bolts between the bunk and
10  the wall.  (*Id*.)   Corrections staff also discovered a Wellbutrin pill that was prescribed for
11  plaintiff, but which plaintiff was not allowed to have on his person.  (*Id*.)   This indicated to
12  corrections staff that plaintiff had been "cheeking" his medications during medication pass, a
13  practice which is deemed a security risk because it enables individuals to accumulate
14  medication to overdose or to trade for favors with other inmates.  (*Id*.)

15      On February 12, 2009, corrections staff obtained information from individuals in
16  plaintiff's living unit that he and another inmate were planning an escape.  (*Id*.)   As a result of
17  this information, corrections staff conducted a search of plaintiff's cell on the morning of
18  February 13, 2009.  (*Id*. at 6.)   The search revealed that grout was missing from around the
19  window in plaintiff's cell, the sink faucet had been broken off, and an attached copper pipe had
20  been flattened and sharpened.  (*Id*.)   These discoveries were consistent with what staff had
21  learned about plaintiff's escape attempt and resulted in plaintiff being moved once again to a
22  more restrictive housing unit.  (*Id*.)

REPORT AND RECOMMENDATION
PAGE -4

Several days later, jail officials made the decision to impose daily searches of plaintiff's cell and daily strip searches of his person. (Dkt. No. 18 at 6.) This decision was based on the significant security concerns posed by plaintiff's behavior, his continuing threats to staff, and his continuing damage to County property. (*Id*.) Plaintiff was advised that his status would be reviewed monthly and that the frequency of searches would be re-evaluated if he changed his behavior. (*Id*.) Plaintiff's status was reviewed on March 11, 2009, April 8, 2009, May 20, 2009, June 17, 2009, July 14, 2009, and August 12, 2009. (*Id*. at 7-10.) The daily search protocol was maintained throughout this period of time as plaintiff demonstrated no sustained improvement in his behavior. (*See id*.) Much of plaintiff's problematic behavior during this period of time involved destruction of County property. (*See id*.) However, plaintiff also continued to threaten corrections staff and he assaulted a staff member on at least one occasion. (*See id*.)

On August 25, 2009, plaintiff was transferred to Western State Hospital for a competency evaluation. (*Id*. at 11.) Plaintiff was found competent and was returned to the jail on September 3, 2009. (*Id*.) Upon plaintiff's return to the jail, Lieutenant Raymond reviewed plaintiff's behavior just prior to leaving for Western State, and reports from the hospital concerning his behavior while there, and those reports appeared to show improvements in plaintiff's behavior. (*Id*.) Lieutenant Raymond met with plaintiff and discussed with him the daily searches and how they related to his behavior. (*Id*.) During that meeting, plaintiff agreed to continue his appropriate behavior and Lieutenant Raymond agreed to decrease the frequency of the searches. (*Id*.) Lieutenant Raymond advised plaintiff that any inappropriate behavior would result in a return to daily searches, but that continued improved behavior would

01  result in a further reduction in the frequency of the searches. (Dkt. No. 18 at 11.) On October
02  15, 2009, a status review was conducted and it was decided that daily strip searches would be
03  discontinued, and that searches would only be conducted for specific cause. (*Id*.)

## DISCUSSION

05  Plaintiff alleges in his complaint that his Fourteenth Amendment right to due process
06  and his Eighth Amendment right to be free from cruel and unusual punishment were violated by
07  daily cell searches and strip searches conducted during the course of his confinement in the
08  Whatcom County Jail in 2009. Defendants admit that they authorized the daily searches but
09  argue that the searches were warranted because plaintiff's threatening and violent actions
10  constituted a threat to the safety and security of the jail.

### Summary Judgment Standard

12  Summary judgment is appropriate when, viewing the evidence in the light most
13  favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such
14  that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A
15  material fact is a fact relevant to the outcome of the pending action. *See Anderson v. Liberty
16  Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are those for which the
17  evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.
18  In response to a properly supported summary judgment motion, the nonmoving party
19  may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts
20  demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the
21  existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of
22  evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling

on summary judgment, the court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994).

<u>Due Process</u>

Plaintiff alleges violations of both his Eighth and Fourteenth Amendment rights. However, because plaintiff was a pretrial detainee at the time his claims arose, his rights derive solely from the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Due process requires that a pretrial detainee not be punished prior to an adjudication of guilt. *Id*. at 535. However, while the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. *Id*. at 537.

The test to be applied in determining whether particular restrictions and conditions imposed as a result of pretrial detention amount to punishment in the constitutional sense is "whether there was an express intent to punish, or 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 538). "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Id*. at 1029. Further, "to constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Id.* at 1030.

REPORT AND RECOMMENDATION
PAGE -7

The Supreme Court has recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546. The Supreme Court has further recognized that corrections administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 547.

Defendants have submitted in support of their motion for summary judgment the declaration of defendant Wendy Jones, the Chief Corrections Deputy at the Whatcom County Jail. Chief Jones states in her declaration that this was the first time she had implemented a daily strip search/cell search protocol for a jail inmate and that she believed the protocol was necessary in plaintiff's case because of his continued threats and assaultive behavior towards staff, his escape attempt, and his continued destruction of County property. Chief Jones maintains that the searches were always intended to ensure the safety and security of the staff and the facility, not to punish plaintiff, and that the searches would have been discontinued much sooner had plaintiff modified his behavioral patterns. And, in fact, the record reflects that the frequency of the searches was reduced in September 2009 after plaintiff had demonstrated improved behavior, and that the daily searches were discontinued altogether in October 2009.

Defendants have demonstrated, through their evidence and arguments, that the daily cell and strip search protocol was implemented in an effort to maintain institutional security and to preserve internal order and discipline. Plaintiff has presented no evidence to rebut any of

that submitted by defendants. Accordingly, defendants are entitled to judgment as a matter of law with respect to plaintiff's due process claim.

## CONCLUSION

For the foregoing reasons, this Court recommends that defendants' motion for summary judgment be granted and that plaintiff's complaint and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this <u>15th</u> day of July, 2010.

*/s/ Mary Alice Theiler*
Mary Alice Theiler
United States Magistrate Judge